UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**GARY BLOHM**
2575 West Brewster Street
Appleton, Wisconsin 5414
              Plaintiff,

vs.                                             **Case No.**

**WASTE MANAGEMENT OF WISCONSIN, INC.**
1001 Fannin Street
Houston, TX 77002
              Defendant.

## COMPLAINT

NOW COMES the Plaintiff, Gary Blohm, (hereinafter "Plaintiff") by and through his attorney, Franz J. Maurer, as and for a Complaint against the Defendant, Waste Management of Wisconsin, Inc. (hereinafter "Defendant"), alleges and states as follows:

1. That jurisdiction in this matter is invoked pursuant to 42 U.S.C. §2000e, *et. seq.*, 42 U.S.C. §§ 12101 *et. seq.*, and 28 U.S.C. §§1331, and 1343.

2. That the Plaintiff is an adult male residing in the Eastern District of Wisconsin, with a current address of 2575 West Brewster Street, Appleton, Wisconsin, 54914, with a date of birth of September 15, 1951.

3. That upon information and belief, the Defendant is incorporated in the State of Wisconsin, and does business in the Eastern District of Wisconsin at 1861 E. Allouez Avenue, P.O. Box 12560, Green Bay, Wisconsin, 54307.

4. That upon information and belief, said Defendant has a principal office at 1001 Fannin Street, Houston, Texas, 77002, with a registered agent and office of: CT Corporation System, 8020 Excelsior Drive, Suite 200, Madison, Wisconsin 53717.

5. That the Defendant is engaged in the business of, among other things, providing waste collection, recycling and disposal services for individuals and businesses both in and out of the State of Wisconsin.

6. That the Plaintiff began his employment with Defendant in July of 1999 as a truck driver at one of the Defendant's Northeast Wisconsin business locations.

7. That the Plaintiff's work-related duties included driving of trucks and other vehicles for the pick-up and removal of waste products from residential and business locations, along with other duties as required from time to time by the Defendant.

8. That on or about December 27, 2012, the Plaintiff suffered a work-related injury to his left arm while employed by and working for the Defendant for which the Plaintiff sought medical treatment.

9. That the Plaintiff thereafter was placed on a "light duty" work restriction under which the Plaintiff continued to work for the Defendant.

10. That after approximately three (3) months from the date of his injury, the Plaintiff failed to show substantial improvement, and was referred to a specialist who diagnosed him with a ¾ inch tear in his left rotator cuff for which he was scheduled for surgery on April 26, 2013.

11. That the Plaintiff continued to perform his "light duty" labor from the date of his injury through April 25, 2013.

12. That prior to the Plaintiff going on medical leave, Jeremy Kriescher, the District Manager of the Defendant, and Brian Thome, the Plaintiff's direct supervisor, made derogatory and discriminatory comments to the Plaintiff regarding his advancing age.

13. That on or about April 5, 2013, the Plaintiff was told that by Mr. Thome that he was "an old man" and that he should "quit his employment".

14. That the Plaintiff was also told by Mr. Thome that after 52 weeks of leave for injury expired, he would immediately be terminated (regardless of his condition).

15. That Mr. Thome also questioned the Plaintiff directly as to why it had taken so long for the Plaintiff's primary doctor to refer him to the specialist, when the Plaintiff had no control whatsoever over the referral.

16. That after the Plaintiff's first surgery, it was determined that the Plaintiff had also injured his bicep muscle as a result of the initial work-related injury, and that this would necessitate a second surgery on November 4, 2013.

17. That on or about March 3, 2014, and after the Plaintiff had undergone a second surgery, the Plaintiff's doctor returned him to work with the following restrictions: "May use left arm below shoulder only, may lift up to 1 lb only with left arm below shoulder level".

18. That the Plaintiff's doctor continued the same work-related restrictions after his next appointment on or about April 7, 2014.

19. That the Plaintiff wanted to return to work and expressed his desire to return to work after providing the Defendant with his doctor's recommendations.

20. That the Plaintiff's restrictions remained the same as they were when the Defendant provided him with light duty work from the end of December 2012 through April 25, 2013.

21. That even though the Defendant had previously provided the Plaintiff with "light duty" work without issue, it nonetheless refused to provide him the same or similar work as a reasonable accommodation to the Plaintiff's disability.

22. That the Defendant's actions in failing to provide the Plaintiff with reasonable accommodation for his disability forced him to be on medical leave and prevented him from returning to work with the Defendant.

23. That in early March 2014, the Defendant asked the Plaintiff's doctor about the current status of the Plaintiff's injury and ability to work, to which the Plaintiff's doctor responded that he anticipated that the Plaintiff would be able to work without any work restrictions in only 2 to 3 months.

24. That despite the Plaintiff's ability to work "light duty" throughout the course of the past several years, and despite the Plaintiff's ability to be able to work without any restrictions in only 2 to 3 months, the Defendant terminated the Plaintiff's employment by letter dated May 6, 2014.

25. That the Defendant created a situation where the Plaintiff was effectively prevented from returning to work and terminated the Plaintiff's employment in violation of Federal Law.

26. That during the course of the Plaintiff's employment with the Defendant, the Defendant's agents, including Ms. Marilyn Bretza, put the burden on the Plaintiff to identify jobs that he could perform for the Defendant, not affirmatively provide the Plaintiff with opportunities for employment within the Company and within the Defendant's then work-related restrictions.

27. That the Defendant failed to inform the Plaintiff as to what positions were available, or what the duties that those positions would have entailed.

28. That the Defendant did not provide the Plaintiff with a listing or a description of available jobs, nor did the Defendant ever mention to the Plaintiff that there was a Senior Technician job then available that would have satisfied the Defendant's responsibilities to accommodate the Plaintiff's disability.

29. That during the course of the Plaintiff's employment, the Plaintiff had complained to Ms. Kris Sith (East/Midwest Supervisor for the Dedicated Team), about supervisors making comments about his age and injury, including comments that it was time for the Plaintiff to retire.

30. That prior to his termination, the Plaintiff had performed satisfactorily in all aspects of his position with the Defendant.

31. That after the Plaintiff was terminated, he proceeded with filing a grievance with his local union representing employees of the Defendant.

32. That thereafter, a grievance meeting was scheduled to hear the Plaintiff's concerns with the termination of his employment.

33. That at the grievance meeting, which occurred on or about May 14, 2014, the District Manager, Jeremy Krieschner, made comments which not only tied the Defendant's termination decision directly to his disability, but also revealed the Defendant's hostility towards the Plaintiff and his disabling condition over the past few years.

34. That Mr. Krieschner stated something to the effect that, "Gary, you were injured at work, ok. We remedied that injury with you. In fact, we remedied both shoulders, did we not? And only one was work-related, but we remedied both. In addition to that, due to that, and due to the inability to get back to work within the policy, you fell within the 12 month period, and we are acting under precedence that we have done before, i.e. [name of another employee]. So this is not uncharted territory for myself, or Waste Management. We have precedents where we have done this before."

35. That Mr. Kriescher's comments directly related the Plaintiff's termination to his disability.

36. That the Plaintiff's grievance did not result in any modification of the Plaintiff's termination, and effectively ended without any resolution of the Plaintiff's claims.

37. That the Plaintiff asserts that the Defendant's actions in firing him were retaliatory in nature, and were further based on discriminatory intent on the basis of the Plaintiff's age and disability, as well as the related surgeries arising from his disability.

38. That the Plaintiff's termination was further based on informing the Defendant of his disability, his requests for accommodation, the opposition he raised to the Defendant when the Defendant failed to accommodate his disability, and the disability itself and its effect on the Defendant's business operations.

39. That Plaintiff alleges that the Defendant intentionally discriminated against the Plaintiff in the terms and conditions of Plaintiff's employment on the basis of Plaintiff's disability and opposition to discrimination in the workplace, in violation the Americans with Disabilities Act of 1990, as amended or restated.

40. That upon information and belief, the Defendant intentionally discriminated against the Plaintiff and terminated the Plaintiff's employment because it was unwilling to make reasonable accommodations for the Plaintiff's disability within the employment context pursuant to the Americans with Disabilities Act of 1990, as amended or restated.

41. That upon information and belief, the Defendant discriminated against the Plaintiff by terminating the Plaintiff's employment on the basis of his disability, conduct prohibited under the Americans with Disabilities Act of 1990, as amended or restated.

42. That Plaintiff alleges that the Defendant intentionally discriminated against the Plaintiff in the terms and conditions of Plaintiff's employment, on the basis of the Plaintiff's age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, as amended or restated.

43. That Plaintiff alleges that Plaintiff's employment with the Defendant was terminated on the basis of the Plaintiff's age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, as amended or restated.

44. That the acts of the agents of the Defendant, as set forth above, all took place in the context of said agents' normal, business related activities for the Defendant.

45. That as a direct and proximate result of the intentional discrimination of the Plaintiff by the Defendant in the context of the Plaintiff's employment, Plaintiff has experienced frustration, humiliation, mental anguish, and stress, and other conscious pain and suffering, and may or will continue to suffer in a similar manner in the future.

46. That as a direct and proximate result of the intentional discrimination of the Plaintiff by the Defendant, in the context of the Plaintiff's employment, Plaintiff has suffered real and measurable economic harm in terms of lost wages and benefits, front pay, and damages for lost future earnings for loss of professional standing and reputation, and may or will continue to suffer similar damages in the future.

47. That with respect to the Plaintiff's claims for Worker's Compensation and the relevance of exclusivity of remedy, the Plaintiff has already been satisfied on all Worker's Compensation-related claims, and has entered into a "Limited Compromise Agreement" that should not have any effect on the Plaintiff's claims for damages in this current action based on discrimination in the context of the Plaintiff's employment with the Defendant.

48. That this Complaint is filed by Plaintiff within ninety (90) days of Plaintiff's receipt of a "Right to Sue" letter from the Equal Employment Opportunity Commission.

WHEREFORE, Plaintiff respectfully requests that the Court award all available and appropriate relief, including:

A. Compensatory damages for frustration, humiliation, mental anguish, stress and damages for lost wages and benefits, front pay, damages for lost future earnings for loss of professional standing and reputation, and related losses in an amount according to the proof at trial, for conscious pain and suffering, and for punitive damages in the amount according to the proof at trial.

B. The costs of this action and reasonable attorney fees incurred.

C. Such other relief as the Court deems just, proper and equitable.

### JURY DEMAND

A 6-PERSON TRIAL BY JURY IS HEREBY REQUESTED.

Dated this 8th day of February, 2016.

**FRANZ J. MAURER,
ATTORNEY AT LAW**

s/ Franz J. Maurer
Franz J. Maurer
Attorney for Plaintiff
State Bar No. 1029708

506 N. Oneida Street
Appleton, WI 54915
(920) 574-2720
(920) 574-2744 (facsimile)